**In re Beth GENTRY, Debtor.**

No. 7–99–03069–WSB–7.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

June 19, 2001.

Anthony E. Collins, Wise, VA, for Debtor.

William E. Callahan, Jr., Roanoke, VA, for trustee.

## MEMORANDUM OPINION

WILLIAM F. STONE, Jr., Bankruptcy Judge.

The matter before the Court is the motion of the Chapter 7 Trustee, William E. Callahan, Jr., Esq. ("Trustee"), requesting the Court to hold the Debtor, Beth Gentry ("Debtor"), in civil contempt of court for her failure to comply with this Court's turnover order dated October 12, 2000, which directed the Debtor to turn over *inter alia* such portion of the Debtor's 1999 federal and state income tax refunds as accrued before the commencement of the Debtor's case. The Court finds the Debtor to be in civil contempt for the following reasons.

### Findings of Fact

The Debtor filed her petition for relief pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on September 13, 1999. In her bankruptcy Schedule B, the Debtor did not list as assets of the estate her expected 1999 federal and state tax refunds. Nor did the Debtor list such refunds as exempt property, as the Debtor filed no bankruptcy Schedule C with her petition. Although the Debtor filed no bankruptcy Schedule C, the Debtor did file a homestead deed pursuant to Va.Code § 34–17 on October 20, 1999 claiming her expected 1999 federal tax refund with an estimated value of $3,500.00 as exempt pursuant to Va.Code § 34–4. On November 12, 1999, the Trustee objected to the Debtor's claim of exemption, asserting that the Debtor failed to timely file her homestead deed.[1] The Court sustained the

---

1. Va.Code § 34–17 provides in relevant part:

To claim an exemption in bankruptcy a

Trustee's objection and denied the Debtor's claim of exemption by order dated December 21, 1999.[2]

Subsequent to the entry of the Court's order sustaining the Trustee's objection, the Trustee filed a motion for turnover of property on August 25, 2000. By his motion, the Trustee sought the entry of an order requiring the Debtor to turn over a portion of her 1999 federal tax refund, which had previously been found to be non-exempt property, and a portion of her 1999 state tax refund, which the Debtor had not claimed as exempt property. The Debtor having not contested the Trustee's motion for turnover of property, the motion was granted by agreed order of the Court dated October 12, 2000, which required the Debtor to turn over *inter alia* such portion of the Debtor's 1999 federal and state income tax refunds as accrued before the commencement of the Debtor's case. In the absence of such property being turned over by the Debtor, the Trustee filed a motion requesting the Court to hold the Debtor in civil contempt for failing or refusing to comply with the order of the Court dated October 12, 2000. A hearing on the Trustee's motion was held on May 9, 2001. At such hearing and by letter to the Court dated subsequent thereto, counsel for the Debtor, Anthony E. Collins, Esq., represented that the Debtor received and expended her 1999 federal tax refund prior to the entry of the Court's turnover order dated October 12, 2000.[3] Counsel for the Debtor further represented that the Debtor could not be held in civil contempt because the Debtor could not have *willfully* failed or refused to comply with the Court's order to turn over the property of the estate because the Debtor did not possess the property on the date of entry of the order.[4] Alternatively, the Debtor requests that if the Court finds her to be in civil contempt, the Debtor should only be required to pay the unpaid balance of the claims that were timely filed in her case, plus the expenses of the Trustee,[5] in order to purge herself of the civil contempt. To that end, the Debtor offered

householder who (i) files a voluntary petition in bankruptcy or (ii) against whom an involuntary petition in bankruptcy is filed shall set such real or personal property apart on or before the fifth day after the date initially set for the meeting held pursuant to 11 U.S.C. § 341, but not thereafter.

2. Because the Debtor filed her homestead deed on October 20, 1999, six (6) days after the initial meeting of creditors held pursuant to 11 U.S.C. § 341 on October 14, 1999, this Court deemed the Debtor's homestead deed invalid and, accordingly, sustained the Trustee's objection and denied the Debtor's claim of exemption of her 1999 federal tax return.

3. In response to the inquiry of the Court, the Trustee has informed the Court that the Debtor received no state tax refund for tax year 1999. Accordingly, the only refund at issue is the Debtor's federal tax refund for tax year 1999. Additionally, the Trustee has determined, upon review of the Debtor's tax year 1999 returns, that the Debtor received a federal tax refund in the amount of $3,175.00.

As the Debtor filed her bankruptcy petition on September 13, 1999, the portion of the Debtor's 1999 federal tax refund that is property of the estate is $2,218.15.

4. Debtor's counsel represented to the Court that the Debtor expended the tax refund on necessities for the support of the Debtor's dependent and herself. Counsel further represented that the Debtor was laid off from her job during the relevant time period and that the Debtor was forced to spend the tax refund to support her family. The Trustee did not controvert the representations of counsel for the Debtor and did not request that the Debtor testify or be subjected to cross-examination.

5. By letter dated May 17, 2001, the Trustee provided the Court with a detailed list of charges incurred by the Trustee in attempting to recover the property at issue from the Debtor, such charges totaling $1,105.25.

to pay such an amount in monthly installments, not to exceed $25.00 per month.

### Conclusions of Law

I.  Unlike under the Bankruptcy Act, a debtor's possession of property of the estate *at the time of entry of a turnover order* is not a prerequisite under the Bankruptcy Code to the entry of a turnover order. Rather, the debtor can be ordered to turn over the value of the property of the estate.

The fact that the Debtor spent her 1999 federal tax refund prior to entry of the turnover order is irrelevant for determining her liability to the bankruptcy estate. Prior to the enactment of the Bankruptcy Code, its predecessor, the Bankruptcy Act, required a trustee seeking turnover of property of the estate to prove, among other things, that the property of the estate subject to the turnover action was in the possession of the defendant at the time of the proceeding. *Maggio v. Zeitz,* 333 U.S. 56, 63–64, 68 S.Ct. 401, 405, 92 L.Ed. 476, 484 (1948) ("The nature and derivation of the remedy make clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding. While some courts have taken the date of the bankruptcy as the time of which the inquiry is directed, we do not consider resort to this particular proceeding appropriate if, at the time it is instituted, the property and its proceeds have already been dissipated, no matter when that dissipation occurred."). However, the Supreme Court did recognize that under the Bankruptcy Act dissipation of property of the estate could constitute contempt. *Id.,* 333 U.S. at 64, 68 S.Ct. at 405, 92 L.Ed. at 484 ("Conduct which has put property beyond the limited reach of the turnover proceeding may be a crime, or, if it violates an order of the referee, a criminal contempt . . .").

■  The enactment of the Bankruptcy Code, and specifically § 542 thereof, altered pre-Code practice to require that the trustee show only that the party subject to the turnover motion possessed the property of the estate during the bankruptcy case. *Boyer v. Davis (In re U.S.A. Diversified Prods., Inc.)* 193 B.R. 868, 874–75 (Bankr.N.D.Ind.1995) ("Present possession is no longer a prerequisite to liability. Instead, liability may be predicated upon possession 'during the case,' not just at the time the [turnover] order is entered. Furthermore, the trustee is no longer limited to recovering specific property or its proceeds. Instead, the trustee is also given the ability to recover 'the value of such property'."). Bankruptcy Code § 542(a) states:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, *during the case,* of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property *or the value of such property,* unless such property is of inconsequential value or benefit to the estate. [emphasis added].

11 U.S.C. § 542(a). By the representations of her counsel, the Debtor has admitted to possessing and expending her tax refund subsequent to the filing of her bankruptcy petition but prior to the entry of the turnover order. Therefore, with possession during the case established, the Trustee is entitled to recover the value of the property of the estate subject to the Court's turnover order.

II. When the property of the estate that a trustee seeks to have turned over is cash, a debtor can be ordered to turn over the value of the property, i.e., an equivalent amount of cash, pursuant to 11 U.S.C. § 542(a), if he no longer possesses the original cash.

■ Because of the fungible nature of money, the cash actually to be turned over to the Trustee pursuant to the turnover order need not be the identical cash proceeds of the tax refund that the Debtor was entitled to receive at the time the Debtor's petition was filed. *Evans v. Robbins (In re Robbins)*, 83 B.R. 688, 693 (Bankr.W.D.Mo.1988) ("Nor must the trustee prove that the same identical cash or property now possessed by the debtor is the same identical cash or property possessed by the debtor at the date of bankruptcy."); *South Falls Corp. v. Rochelle*, 329 F.2d 611, 612–13 (5th Cir.1964) (holding that the inability of the trustee to identify the precise dollars received by a transferee from a debtor is no obstacle to a turnover order directed to the transferee whose remaining assets are sufficient in amount to permit reimbursement.).[6] Accordingly, the Debtor's expenditure of those cash proceeds does not preclude the Trustee from recovering their equivalent value.

III. If a debtor does not possess either the property of the estate or the value of the property of the estate at the time the turnover action is heard, then the debtor has a valid defense to the turnover action. However, in the instant case, the Debtor did not assert an inability to turn over the property of the estate or its value at the time of the hearing on the Trustee's turnover motion. The Debtor is therefore not allowed to collaterally attack the resulting turnover order in this subsequent contempt proceeding.

■ If a debtor proves that he is not in possession of the property of the estate or its value at the time that the turnover action is heard, then entry of the turnover order is precluded. *Lawrence v. Chapter 7 Trustee (In re Lawrence)*, 251 B.R. 630, 639 (S.D.Fla.2000) (citing *Maggio*, 333 U.S. at 63–64, 68 S.Ct. at 405, 92 L.Ed. at 484). Instead, the trustee is more appropriately entitled to the recovery of a money judgment against the debtor for the value of the property of the estate. *Boyer*, 193 B.R. at 879 ("The court concludes that a turnover defendant's lack of present possession of property of the bankruptcy estate or its proceeds is not a defense to a turnover action under the Bankruptcy Code. If the turnover defendant has improperly transferred property of the estate, so that neither the property nor its proceeds are in the defendant's possession, the trustee may recover a money judgment for the value of such property.").

---

**6.** In rendering its decision in *South Falls Corp.*, the United States Court of Appeals for the Fifth Circuit applied case law as then existing which required that the party subject to a turnover order be in possession of the property of the estate at the time of entry of the turnover order. Nonetheless, the Fifth Circuit Court of Appeals found the transferee to be the alter ego of the transferor-debtor who was in possession of the estate property at the time of entry of the turnover order and therefore liable to the same extent as the debtor to turn over the property pursuant to the turnover order entered against the debtor. *South Falls Corp.*, 329 F.2d at 619.

■ In the instant case however, the Debtor failed to contest the Trustee's turnover motion at the time it was heard. Rather, the Debtor consented to the entry of the turnover order. Her decision to do so is not only inconsistent with her present allegation that she expended the property of the estate prior to entry of the turnover order, but also precludes her from collaterally attacking such order at this time or asserting, as a defense to the contempt motion, her present allegation, which would have been a timely defense to the turnover action at the time it was heard. *U.S. v. Rylander,* 460 U.S. 752, 756–57, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521, 527–28 (1983) ("It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not reopen to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience." (quoting *Maggio,* 333 U.S. at 69, 68 S.Ct. at 408, 92 L.Ed. at 487)); *Oriel v. Russell,* 278 U.S. 358, 363, 49 S.Ct. 173, 174, 73 L.Ed. 419, 424 (1929) ("Being made, [the finding necessary for entry of a turnover order] should be given weight in future proceedings as one that may not be collaterally attacked by an effort to try over the issue already heard and decided at the turnover."). The importance of a timely defense to a turnover action is evidenced by the comments of the bankruptcy court in *Lawrence,* which, quoting *Maggio,* stated:

It is important for the court to consider the whole record and to exercise reason and sound judgment, "mindful that the [turnover] order should issue only as a responsible and final adjudication of possession and ability to deliver, not as a questionable experiment in coercion which will recoil to the discredit of the judicial process if time proves the adjudication to have been improvident and requires the court to abandon its enforcement."

251 B.R. at 639 (quoting *Maggio,* 333 U.S. at 67, 68 S.Ct. at 407, 92 L.Ed. at 486).

IV. Accordingly, the entry of an order finding a debtor in civil contempt for failure to turn over estate property pursuant to the terms of a turnover order is appropriate if the debtor does not prove that compliance is factually impossible at the time the contempt motion is heard *and* that the circumstances giving rise to the debtor's inability arose since entry of the turnover order.

A. The Trustee's showing of civil contempt.

■ In this civil contempt proceeding, the Trustee, as the party seeking the contempt, bore the initial burden of proving by clear and convincing evidence that the respondent violated the Court's turnover order. *Lawrence,* 251 B.R. at 650. In the instant case, it cannot be disputed that the Trustee met this initial burden. At the hearing on this matter, the Debtor stipulated that she had not turned over the property of the estate in contravention of the Court's valid turnover order.

B. The Debtor's failure to assert an impossibility defense.

■ Establishment of a *prima facie* case for civil contempt shifts the burden of production to the alleged contemnor, who must then come forward with evidence to show inability to comply with the court's order. *In re Affairs With A Flair, Inc.,* 123 B.R. 724, 727 (E.D.Pa.1991). Only upon a showing of inability to comply by the alleged contemnor does the burden of proving ability to comply shift to the party seeking the contempt. *Lawrence,* 251

B.R. at 650. In order to prove her inability to comply with the turnover order, the Debtor must have shown at the hearing on this matter "a present inability to comply that goes beyond a mere assertion of inability" and also that the Debtor made "all good faith reasonable efforts to meet the terms of the court order." *Id.* at 651. Additionally, because of the procedural posture of the instant case and the Debtor's failure to contest the entry of the Court's turnover order, the Debtor must prove that her inability to comply is caused by circumstances that arose subsequent to the entry of the turnover order but prior to the hearing on the Trustee's contempt motion. *See Oriel,* 278 U.S. at 363, 49 S.Ct. at 174, 73 L.Ed. at 424 (1929) ("Thereafter, on the motion for commitment the only evidence that can be considered is the evidence of something that has happened since the turnover order was made showing that since that time there has newly arisen an inability on the part of the bankrupt to comply with the turnover order."). At the hearing on this matter and by subsequent letter to the Court, the Debtor made no representations, beyond her mere assertion of inability, to demonstrate her present inability to comply with the terms of the turnover order. Nor did the Debtor present any evidence of circumstances which arose since the date of entry of the turnover order that contributed to such alleged inability. The Court finds that the Debtor has failed to satisfy her burden of proof in rebutting the Trustee's charge of contempt and, accordingly, finds the Debtor in civil contempt.

## V. Sanction.

Because of the representations made by counsel for the Debtor regarding the Debtor's present financial position and the Trustee's agreement to same at the hearing on this matter, the Court will not consider incarceration as a tool to coerce the Debtor into complying with the terms of the Court's turnover order. *See Maggio,* 333 U.S. at 72, 68 S.Ct. at 409, 92 L.Ed. at 488–89 ("Of course, to jail one for a contempt for omitting an act he is powerless to perform would ... make the proceeding purely punitive, to describe it charitably. At the same time, it would add nothing to the bankruptcy estate."). Because the burden of proving inability to comply in a contempt proceeding is initially placed on the alleged contemnor and only shifts to the party seeking the contempt upon satisfaction of that initial burden, and because that initial burden was not satisfied by the Debtor in the instant case, sufficient evidence of the Debtor's present inability to comply with the terms of the Court's turnover order was never put before the Court. Nevertheless, the Court has substantial reservations about entering a contempt order requiring the Debtor immediately to turn over to the Trustee the value of the property of the estate. Because this may in actuality be an impossible demand, entry of such an order could be a pointless exercise.

■ Under the circumstances of this case, the Court believes that the appropriate sanction for the Debtor's conduct is to require her to pay to the Trustee not only the sum of $2,218.65 for which she is already liable under the provisions of the previously mentioned turnover order, but also interest upon such amount from October 12, 2000, the date of such order, to the time of payment at the rate of eight-percent (8.0%) per annum, the legal rate of interest in Virginia, plus the sum of $765.00 representing the value of the Trustee's time expended in the course of this contempt proceeding. The Debtor shall continue to be in civil contempt of this Court until she shall purge herself of such contempt by paying such aggregate amount to the Trustee. In the event that such amount exceeds the total of the credi-

tor claims and administrative expenses of the case, any excess will revert to the Debtor pursuant to 11 U.S.C. § 554(c).

VI. Finally, the Trustee may attempt to revoke the Debtor's discharge pursuant to 11 U.S.C. § 727(d) for failure to obey this Court's orders.

If the Debtor does not comply within a reasonable time with the terms of the Court's turnover order and, by extension, the contempt order contemplated here, the remaining remedy available to the Trustee is to initiate an adversary proceeding [7] seeking revocation of the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(3) [8] and (a)(6)(A).[9] Although revocation of a debtor's discharge is a harsh measure, a debtor's knowing failure to turn over his tax refund, as ordered, has been held to warrant this act. *Hunter v. Watson (In re Watson)*, 247 B.R. 434 (Bankr.N.D.Ohio 2000). Since the enactment of § 727(a)(6), courts have diverged on what showing is necessary by the party seeking to revoke the debtor's discharge. Some courts have held that revocation of a debtor's discharge for refusal to obey a court's order requires the party seeking the revocation to show a willful or intentional act. *Concannon v. Constantini (In re Constantini)*, 201 B.R. 312, 316 (Bankr.M.D.Fla. 1996); *Wilmington Trust Co. v. Jarrell (In re Jarrell)*, 129 B.R. 29, 33 (Bankr. D.Del.1991). Other courts have determined that the showing necessary to revoke a debtor's discharge is the same as that for determining whether to hold a party liable for civil contempt. *Watson*, 247 B.R. at 436; *Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D.Ohio 1999); *U.S. v. Richardson (In re Richardson)*, 85 B.R. 1008, 1011 (Bankr. W.D.Mo.1988) (finding that the use of the word "refused" in § 727(a)(6) denotes that an action brought under that section should be treated, in substance, as a civil contempt proceeding, thereby implicitly negating the intent requirement from the word "refused" as willfulness is not an element in a civil contempt proceeding). In light of this divergence of opinion and given the fact that no proceeding to revoke the Debtor's discharge is presently before the Court, the Court will refrain from opining on the issue of what level of conduct is required by § 727(a)(6).

### Conclusion

For the foregoing reasons, the Court will enter a contemporaneous order finding the Debtor to be in civil contempt and requiring her to pay to the Trustee the amounts provided in section V of this Memorandum Opinion.

The Clerk is hereby directed to serve copies of this Memorandum Opinion upon the Debtor, Beth Gentry, Post Office Box 2022, Clintwood, Virginia 24228, counsel for the Debtor, Anthony E. Collins, Esq., Post Office Box 3465, Wise, Virginia 24293, the Chapter 7 Trustee, William E. Callahan, Jr., Esq., Post Office Box 1788, Roanoke, Virginia 24008–1788, and the Office of the United States Trustee, Poff Federal

---

7. Bankruptcy Rule 7001(4) provides:

   An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: (4) a proceeding to object to or revoke a discharge ...

8. 11 U.S.C. § 727(d)(3) provides:

   On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under section (a) of this section if(3) the debtor committed an act specified in subsection (a)(6) of this section.

9. 11 U.S.C. § 727(a)(6)(A) provides:

   The court shall grant the debtor a discharge, unless(6) the debtor has refused, in the case(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify ...

Building, Room 806, 280 Franklin Road, SW, Roanoke, Virginia 24011–2212.