In re Fabian Eugenio
ARAUJO, Debtor.

Barbara H. Katz, Trustee, Plaintiff,

v.

Fabian Eugenio Araujo, Defendant.

Bankruptcy No. 02–31012(LMW).
Adversary No. 02–3148.

United States Bankruptcy Court,
D. Connecticut.

April 2, 2003.

**20**

Fabian Eugenio Araujo, Waterbury, CT, Debtor and Pro Se Defendant.

Barbara H. Katz, Esq., New Haven, CT, Chapter 7 Trustee and Plaintiff.

### MEMORANDUM OF DECISION RE: MOTION FOR DEFAULT JUDGMENT

LORRAINE M. WEIL, Bankruptcy Judge.

Before the court is the chapter 7 trustee's (the "Trustee") motion (Adv. P. Doc. I.D. No. 7, the "Motion") for entry of default judgment on her complaint to revoke the above-captioned debtor's (the "Debtor") discharge. This is a core matter within the purview of 28 U.S.C. § 157(b).

### I. FACTS [1]

This case was commenced by a voluntary chapter 7 petition filed on March 4, 2002. That petition listed the Debtor's address as "49 Sharon Rd. Apt. 10, Waterbury, CT 06478." [2] (*See* Chapter 7 Case Doc. I.D. No. 1.) That petition was filed through an appearing attorney, Meryl Anne Spat, Esq. (*See id.*) The schedules filed with the petition listed secured claims of $24,704 and unsecured claims of $88,261; the largest of those listed claims refers to a $63,000 "note" (the "Note") held by Patricio Amores. (*See* Chapter 7 Case Doc. I.D. Nos. 1, 4.) The meeting of creditors (as subsequently continued, the "Section 341 Meeting") at which the Debtor was subject to examination under oath by the Trustee pursuant to Bankruptcy Code § 341 originally was scheduled for March 26, 2002 and was continued to and concluded on April 9, 2002. (*See* Chapter 7 Case Doc. I.D. No. 2 and subsequent docket entries.) At the March, 2002 session of the Section 341 Meeting, the Trustee inquired of the Debtor concerning his disposition and/or retention of the Note proceeds. The Debtor apparently responded that he had invested and lost the Note proceeds in the stock market. The Trustee requested *corroborating* (*and/or related*) documentation (the "Documentation").

---

1. The facts which follow are set forth in the respective case files for this adversary proceeding (cited as "Adv. P. Doc. I.D. No. ___") and this chapter 7 case (cited as "Chapter 7 Case Doc. I.D. No. ___"), and in the affidavit (Adv. P. Doc. I.D. No. 10, the "Affidavit") filed by the Trustee in support of the Motion.

2. Service of that certain Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines (Chapter 7 Case Doc. I.D. No. 2, the "Notice") upon the pertinent parties was effectuated by the Bankruptcy Noticing Center ("BNC") (the entity charged with service of court notices and orders). Upon service of the Notice on the Debtor, BNC determined that 06478 was an incorrect zip code in relation to the listed address. (*See* Chapter 7 Case Doc. I.D. No. 3.) Because "[the United States Postal Service]...regulations require that automation-compatible mail display the correct ZIP," BNC determined the correct zip code to be 06705–4022 and accordingly made service upon the Debtor. (*See id.*) Consequently, the Debtor's address as modified by the correct zip code is hereafter defined as the "Listed Address."

(Affidavit ¶ 3.) The Trustee confirmed that request in a letter dated April 2, 2002 to Attorney Spat. (Affidavit ¶ 4.) Receiving no response, the Trustee renewed her request in a second letter dated June 11, 2002 to Attorney Spat, further advising her that "[u]nless I receive the requested information within the next 7 days I will file a motion to show cause." (Affidavit ¶ 5 and Exhibit B.) That same day, the Debtor received his chapter 7 discharge. (*See* Chapter 7 Case Doc. I.D. No. 11, the "Discharge".) Neither the Debtor nor his attorney responded in any manner to the Trustee's letters and request (except with silence).

Accordingly, on June 24, 2002 the Trustee filed a Motion for an Order To Show Cause. (*See* Chapter 7 Case Doc. I.D. No. 13.) An Order To Show Cause (Chapter 7 Case Doc. I.D. No. 14, the "Show Cause Order")[3] was issued on July 2, 2002 requiring the Debtor and his counsel to appear at a hearing (as subsequently continued, the "Show Cause Hearing") originally scheduled for July 24, 2002. The Show Cause Hearing was continued on the record to August 14, 2002. At the Show Cause Hearing, the court issued its Order Setting Deadline for Debtor To Provide Documentation To Trustee (Chapter 7 Case Doc. I.D. No. 15, the "Documentation Order") pursuant to which the Debtor was required, on or before September 20, 2002, to deliver certain documentation and information to the Trustee regarding the Note proceeds. The Show Cause Order and the Documentation Order both were served on the Debtor (at the Listed Address) and on Attorney Spat. The Debtor did not appear at the Show Cause Hearing and did not comply with the Documentation Order.

On October 21, 2002, the Trustee timely filed the complaint (Adv. P. Doc. I.D. No. 1, the "Complaint") that commenced this adversary proceeding. The Trustee served the Complaint (and related summons) by first-class mail on the Debtor at the Listed Address and on Attorney Spat pursuant to Rule 7004(b)(9) of the Federal Rules of Bankruptcy Procedure.[4] (*See* Adv. P. Doc. I.D. No. 3.) The Complaint seeks a revocation of the Discharge pursuant to Bankruptcy Code § 727(d)(3)[5] for

---

3. The form of the Show Cause Order submitted to (and entered by) the court erroneously referred to "evidence of the value of the Debtor's real property" rather than the Documentation.

4. Rule 7004(b) provides in relevant part as follows:

   **(b) Service by First Class Mail.** Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)-(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

   . . . . .

   (9) Upon the debtor, after a petition has been filed by or served upon the debtor and until the case is dismissed or closed, by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address.

   Fed. R. Bankr.P. 7004(b)(9) (West 2003).

5. Section 727(d)(3) provides as follows:

   (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

   . . . . .

   (3) the debtor committed an act specified in subsection (a)(6) of this section.

   11 U.S.C. § 727(d)(3) (West 2003). Section 727(a) provides in relevant part as follows:

   (a) The court shall grant the debtor a discharge, unless—

   . . . .

   (6) the debtor has refused, in the case—

   (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify . . . .

the Debtor's "refus[al]" to perform in accordance with the Documentation Order. Attorney Spat did not file an appearance in the adversary proceeding and the Debtor was deemed to have appeared *pro se. See American Express Centurion Bank v. Truong (In re Truong)*, 271 B.R. 738, 741 (Bankr.D.Conn.2002).

The Trustee obtained a clerk's entry of default against the Debtor on December 9, 2002 for failure to plead or defend. (*See* Adv. P. Doc. I.D. No. 6.) The Trustee filed the Motion on December 16, 2002 and served it upon the Debtor at the Listed Address. A hearing on the Motion was held on January 8, 2003.[6] At that hearing, the Trustee advised the court, among other things, that all the pleadings that she had served upon the Debtor at the Listed Address (including notice of the hearing on the Motion) had been returned as undeliverable marked "moved, left no address" by the postal authorities. (January 8, 2003 Record at 3:42:56.) The Debtor did not appear at the hearing on the Motion. The court directed the Trustee to file the Affidavit and took the Motion under advisement. Because the court had some reservations about revoking a discharge on a motion for default judgment in a proceeding where the debtor was *pro se*, the court scheduled an on-the-record status conference at which the Debtor, Attorney Spat and the Trustee were ordered to appear. (*See* Chapter 7 Case Doc. I.D. No. 16.) That status conference was convened on January 29, 2003. The Trustee, counsel for the United States Trustee and Attorney Spat appeared; the Debtor did not.

At the status conference, Attorney Spat advised the court that she had been unable to contact her client for some time: Attorney Spat did not know her client's whereabouts; his phone was not working; he had been terminated from his job; Attorney Spat had no forwarding address for him and no phone number. (January 29, 2003 Record at 3:46:01 to 3:46:21.)

The Debtor has never amended the Listed Address and it remains the only address which the court has for the Debtor.

## II. DISCUSSION

■ The Trustee claims that she is entitled to revocation of the Discharge under Bankruptcy Code § 727(d)(3) because the Debtor allegedly "refused" to comply with the Documentation Order. To prevail on the Motion, the Trustee must demonstrate a *prima facie* case under Section 727(d)(3). *See In re Truong*, 271 B.R. at 742.

Section 727(a)(6) denies a discharge to a debtor who has refused to obey any lawful order of the court . . . .

The purpose of section 727(d)(3) is to make it possible for the debtor to obtain a discharge early in the case but, to protect the estate and creditors, makes it revocable if the debtor later refuses to obey an order. . . . The "refusal" under section 727(d)(3) should be considered a refusal that occurs after the granting of a discharge.

6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.16[5] at 727–75 (15th ed. rev.2000) (footnotes omitted).[7]

11 U.S.C. § 727(a)(6)(A) (West 2003).

6. Reference to the audio record of the relevant hearings appear herein in the following form: "Record at ____:____:____."

7. For example, having identified the issue of the Note proceeds and having received a plausible but insufficiently substantiated ex-

planation from the Debtor, the Trustee could have delayed entry of the Debtor's discharge by filing a motion for extension of the date for the Trustee to file an objection to the Debtor's discharge. *See* Fed. R. Bankr.P. 4004(b); 11 U.S.C. § 727(a)(5) (discharge denied if "the debtor has failed to explain satisfactorily, before determination of denial of

Section 727(d)(3) specifically refers to Section 727(a)(6). Thus, (subject to the qualification that the "refus[al]" must occur post-discharge) if discharge would have been denied under Section 727(a)(6) for the same "refus[al]," discharge may be revoked for such "refus[al]." Under Section 727(a)(6)

> [a] debtor will be denied a discharge if he or she has refused to obey any lawful order of the court. If the order is authorized in the words of, or by implication from, the statute, it is lawful.
>
> The original burden of going forward, as well as the ultimate burden of proof under section 727(a)(6)(A), is on the [Trustee] ... to show that there has been a violation of a lawful order of the court. The burden of going forward then shifts to the debtor to prove that he or she has not committed the objectionable act.

6 *Collier on Bankruptcy* ¶ 727.09[1], at 727–49 (footnotes omitted). Courts are not in complete agreement as to whether the statutory term "refuse[ ]" requires an element of willfulness or intent. *Compare Wilmington Trust Co. v. Jarrell (In re Jarrell)*, 129 B.R. 29, 33 (Bankr.D.Del. 1991) ("refuse[ ]" requires a willful or intentional act) *with Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D.Ohio 1999) (civil contempt standard, which does not require proof of intent, applies).[8]

■ There are three issues which merit consideration here. First, was service of the Show Cause Order, the Documentation Order, the Summons and Complaint and the Motion (collectively, the "Pleadings") at the Listed Address effective even if the Debtor was not there to receive them? Second, was the Documentation Order a "lawful order?" Third, given the Debtor's apparent lack of actual knowledge of entry of the Documentation Order, can his failure to respond to it be deemed a "refus[al]" within the purview of Section 727(a)(6)(A)? The court will consider each question in turn.

### A. Effective Service

■ The court concludes that service of the Pleadings by mail upon the Debtor at the Listed Address was effective even if the Debtor was not there to receive them. Rule 7004 authorized service of the Pleadings upon the Debtor by mail. The Listed Address was the only mailing address provided to the court by the Debtor. It was the Debtor's responsibility to maintain a current mailing address on file with the court at all times during the pendency of this chapter 7 case. *See Williams v. Faulkner*, No. 95–CV–741, 1998 WL 278288, at *2 (N.D.N.Y. May 20, 1998). Thus, service of the Pleadings by mail upon the Debtor at the Listed Address (the only address on file with the court) was effective even if he was not there to receive them. *See Bak v. Vincze (In re Vincze)*, 230 F.3d 297, 299–300 (7th Cir. 2000) ("Rule 7004's allowance for service by mail offers constitutionally adequate notice of suit ... and does not require proof

---

discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities"). Instead, the Trustee accepted the Debtor's explanation subject to provision of corroborating documentation (which ultimately was the subject of the Documentation Order).

8. Arguably, willfulness or intent (or lack thereof) can be considered by the court in any

event. *Cf. In re Kokoszka,* 479 F.2d 990, 997–98 (2d Cir.1973), *aff'd,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). Accordingly, it may be that the apparent disagreement among the courts on that issue may relate more to the proper allocation of the burden of proof on the issue rather than to a substantive element of the discharge objection.

of actual receipt .... Thus, service is effective on a debtor even if mailed to the wrong address, if the address to which it is mailed is the last listed by the debtor in a filed writing." (citation and internal quotation marks omitted)); *Hammer v. Drago (In re Hammer),* 112 .B.R. 341, 345 (9th Cir. BAP 1990), *aff'd,* 940 F.2d 524 (9th Cir.1991).

### B. *Lawful Order*

The court concludes that the Documentation Order was a "lawful order." One of the Trustee's duties in this case is to "investigate the financial affairs of the [D]ebtor," 11 U.S.C.A. § 704(4) (West 2003). Seeking (and obtaining) entry of the Documentation Order was a proper means for the Trustee to perform that duty. It is true that the Show Cause Order referred to "evidence of the value of the Debtor's real property" rather than the Documentation. However, the Show Cause Order did order the Debtor to appear at the Show Cause Hearing. Moreover, as discussed above, service of the Show Cause Order at the Listed Address was effective even if the Debtor was not there to receive it. Had the Debtor appeared at the Show Cause Hearing as ordered, he would have had prior notice of the Documentation Order. Accordingly, the Documentation Order is not so defective (if it is defective at all) as to render it not a "lawful order."

### C. *"Refus[al]"*

Because it makes no difference to the result, the court adopts (for purposes of this memorandum only) the *Jarrell* view that "refus[al]" requires a willful or intentional act. Using that standard, the court concludes that the Trustee has made out a *prima facie* case on "refus[al]." It is true that the Debtor might have lacked actual knowledge of the Documentation Order. However, that was his own fault. That is because, as discussed above, it was the Debtor's responsibility to maintain a current mailing address on file with the court at all times during the pendency of this chapter 7 case. Moreover, the Debtor was on notice from the 341 Meeting that the Trustee wanted the Documentation. Given the Debtor's failure to produce the Documentation voluntarily, entry of the Documentation Order should have come as no surprise to the Debtor. Finally, it is a reasonable inference from the facts properly before the court that, the Trustee apparently having probed a sensitive area of inquiry at the Section 341 Meeting, the Debtor's disappearance (at least from the court's "radar") was motivated by his desire to avoid (or evade) further responding to the Trustee. The Debtor cannot expect to obtain and retain the Discharge under such circumstances. Based upon the foregoing, the court concludes that the Trustee has made a *prima facie* case on the issue of "refus[al]." *Cf. Yoppolo v. Walter (In re Walter),* 265 B.R. 753, 759–60 (Bankr. N.D.Ohio 2001)(discharge revoked under Section 727(a)(6)(A) using *Magack* "civil contempt" standard; "for purposes of a civil contempt action, actual knowledge of a court order will be imputed to a party when that party had the opportunity to know of a court order, but simply chose not to gain actual knowledge of the order."). *See also In re Hammer,* 112 B.R. at 346. ("[T]he debtor's disappearance constitute[s] inexcusable disregard for the bankruptcy proceeding ....")

The court concludes that the Trustee has made out a *prima facie* case in all respects for revocation of the Discharge.

### III.  CONCLUSION

For the reasons set forth above, judgment will issue for the Trustee revoking the Discharge.