**CORRECTED OPINION**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: ALLISON MARIE JORDAN,
                        *Debtor.*

TOM C. SMITH, JR.,
            *Plaintiff-Appellee,*

v.                                              No. 06-2154

ALLISON MARIE JORDAN,
            *Defendant-Appellant,*

            and

U.S. TRUSTEE,
                        *Trustee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(2:06-cv-00380-RBS; BK-05-70093-DHA; AP-06-07035-DHA)

Argued: December 5, 2007

Decided: April 3, 2008

Before MICHAEL and GREGORY, Circuit Judges, and
John Preston BAILEY, Chief United States District Judge
for the Northern District of West Virginia, sitting by designation.

Affirmed in part; reversed in part by published opinion. Chief District
Judge Bailey wrote the opinion, in which Judge Gregory joined.

Judge Michael wrote a separate opinion concurring in part and dissenting in part.

---

**COUNSEL**

Leonard David Levine, CHILDRESS, FLAX, LEVINE, P.C., Virginia Beach, Virginia, for Appellant. Tom Cain Smith, Jr., Virginia Beach, Virginia, for Appellee.

---

**OPINION**

BAILEY, Chief District Judge:

In this case, we are asked to determine the level of intransigence necessary to support the revocation of a discharge in bankruptcy under 11 U.S.C. § 727(a)(6). Finding that the district court applied the proper legal standard, but erred in the application of that standard to the appellant, we affirm in part and reverse in part.

I

Allison Marie Jordan (Jordan) filed her Chapter 7 bankruptcy petition on January 7, 2005. Tom C. Smith, Jr. (Trustee) was duly appointed as Trustee. On January 10, 2005, the bankruptcy court issued a standard administrative order to Jordan. Among the provisions of the administrative order were the following:

- You shall not sell, transfer, remove, destroy, mutilate or conceal any of your property, and you shall make all or any part thereof available to the Trustee, when requested to do so.

- You shall not turn over any of your property to any creditor or party in interest without the bankruptcy Trustee's knowledge and consent, unless so ordered by the United States Bankruptcy Court.

• You shall cooperate with the Trustee as is necessary to enable the Trustee to perform the Trustee's duties as required by law.

• You shall obey all orders of the United States Bankruptcy Court and your responsibility for doing so does not cease even after a discharge is granted. The discharge does not conclude your bankruptcy case. A discharge may be revoked, for cause.

The first meeting of creditors was held on February 17, 2005. At the meeting, as is customary in the District, the debtor submitted to the Trustee a comparative market analysis showing the fair market value of Jordan's home in Virginia Beach, Virginia (the Property) to be $225,000. Jordan also submitted to the Trustee a liquidation analysis showing that after deductions for the balances owed on the first and second mortgages and a 10% allowance for the costs of sale, the Property had an equity of $4,960, which Jordan claimed as exempt. The Trustee accepted this documentation without comment or request for additional information.

The Trustee also obtained a market analysis for the Property, which indicated a property value of $250,000. The Trustee performed his own liquidation analysis, which showed that after paying off liens, cost of sale, Trustee's commission, and the $5,000 exemption, the Property would net $1,264 at sale. Based upon that analysis, the Trustee determined not to market the property because the potential net recovery was too little to risk a sale.

On motion of the United States Trustee, the bankruptcy court entered an order on May 25, 2005, which extended the grant of Jordan's discharge until June 17, 2005. According to the motion, the extension was required to allow the Trustee additional time to investigate Jordan's financial condition and the accuracy of her reported income. That motion did not involve the Property. On June 24, 2005, Jordan was granted a discharge.

On July 1, 2005, Jordan, who had lost her business and was unemployed, refinanced her home, paying off the first and second mortgages and receiving approximately $15,000, which she used for living

expenses. A new deed of trust in the amount of $231,000 was recorded in connection with the refinance. Jordan refinanced without the knowledge or consent of the Trustee or the bankruptcy court.

On July 6, 2005, Maxwell Edwards (Edwards), who was listed in Jordan's schedules as an unsecured creditor, filed a proof of claim as a secured creditor in the amount of $5,696. On November 2, 2005, the Trustee filed an objection to the Edwards claim, but withdrew his objection on November 8, 2005. Jordan was not advised of the reason for the objection or the withdrawal thereof.

In November of 2005, the Trustee received an offer to purchase the Property from Edwards' attorney, without the involvement of a real estate agent, for the sum of $227,000. The Trustee filed an application to sell the Property and, in the application, estimated a net recovery for unsecured creditors. Upon learning that the Property had been refinanced for an amount in excess of the Edwards offer, the Trustee withdrew the sale application and filed a complaint for the revocation of the discharge for failure to comply with the bankruptcy court's order directing her to cooperate with the Trustee in the administration of the estate.

Jordan filed a timely response to the complaint, and, at the pretrial conference, the parties agreed that there were no facts in dispute. On June 12, 2006, the bankruptcy court issued its Memorandum Opinion and Order revoking Jordan's discharge. *Smith v. Jordan*, 356 B.R. 651 (Bankr. E.D. Va. 2006). In the opinion, the bankruptcy court found that Jordan was not wilfully uncooperative with the Trustee, but found that under 11 U.S.C. § 727(a)(6)(A) intent was a "non-issue."

Jordan then filed a timely appeal to the district court, which, in an opinion entered September 26, 2006, affirmed the bankruptcy court. *Jordan v. Smith*, 356 B.R. 656 (E.D. Va. 2006).

## II

"Because the district court 'act[ed] in its capacity as a bankruptcy appellate court, we review the bankruptcy court's decision indepen-

dently.' *Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 300 (4th Cir. 2002). We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *See Kielisch v. Educational Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2001)." *In re Ekenasi*, 325 F.3d 541, 544 (4th Cir. 2003).

## III

The district court correctly found that a Trustee seeking a revocation of a discharge under 11 U.S.C. § 727(a)(6)(A) must establish that the debtor wilfully and intentionally refused to obey the court's order. Under 11 U.S.C. § 727(a)(6)(A), a bankruptcy court "shall grant the debtor a discharge, unless the debtor has refused to obey any lawful order of the court, other than an order to respond to a material question or to testify."

Revocation of a debtor's discharge is an extraordinary remedy. *Miller v. Kasden (In re Kasden)*, 209 B.R. 239, 241 (8th Cir. BAP 1997). "Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *Grochocinski v. Eckert (In re Eckert)*, 375 B.R. 474, 478 (Bankr. N.D. Ill. 2007), *quoting State Bank of India v. Kaliana (In re Kaliana)*, 202 B.R. 600, 603 (Bankr. N.D. Ill. 1996). "The statute is construed strictly against the party seeking revocation and liberally in the debtor's favor." *Pierce v. Fuller (In re Fuller)*, 356 B.R. 493, 495 (Bankr. D.S.D. 2006), *citing Kaler v. Olmstead (In re Olmstead)*, 220 B.R. 986, 993 (Bankr. D.N.D. 1998).

"The term used in § 727(a)(6)(A) is 'refused' not 'failed.' Accordingly, the Court must find that the Debtors' lack of compliance with the relevant court order was willful and intentional. *LaBarge v. Ireland (In re Ireland)*, 325 B.R. 836, 838 (Bankr. E.D.Mo. 2005); *Cummins v. Hays (In re Cummins)*, 166 B.R. 338, 358 (Bankr. W.D. Ark.1994); 3 Norton Bankruptcy Law and Practice 2D, § 74:16, p. 74-35 (1994). The party objecting to discharge satisfies this burden by demonstrating the debtor received the order in question and failed to comply with its terms. *Ireland*, 325 B.R. at 838; *Katz v. Araujo (In re Araujo)*, 292 B.R. 19, 24 (Bankr. D.Conn. 2003). Such a showing then imposes upon the debtor an obligation to explain his non-

compliance. *Associates Commercial Corp. v. Reavis (In re Reavis)*, 92 B.R. 380, 383 (Bankr. W.D.Mo. 1988); *United States of America v. Richardson (In re Richardson)*, 85 B.R. 1008, 1011 (Bankr. W.D.Mo.1988); 6 Collier on Bankruptcy, ¶ 727.09[1], p. 727-50 (15th ed. Rev. 2003)." *Pierce v. Fuller (In re Fuller)*, 356 B.R. 493, 495 (Bankr. D.S.D. 2006), *quoting State of Missouri v. Foster*, 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006).

In *Marcus v. Jeffries (In re Jeffries)*, 356 B.R. 661 (Bankr. E.D. Va. 2006), the bankruptcy court discussed the status of law on this issue and, particularly, the district court decision under review in this case:

> Section 727(a)(6)(A) thus provides for the revocation of a debtor's discharge if that debtor "refuses" to obey a lawful Court order. The term "refuse" is not defined in the Bankruptcy Code. *Gillman v. Green (In re Green)*, 335 B.R. 181, 183 (Bankr.D.Utah 2005). A recent opinion in this District discusses the split among the various courts with regard to whether an action to revoke discharge pursuant to Sections 727(d)(3) and 727(a)(6) requires a showing of willfulness or intent in refusing to obey a Court order. *See Jordan [v. Smith]*, 356 B.R. 656, at 659-60 (*citing In re Araujo*, 292 B.R. at 23; *In re Gentry*, 275 B.R. 747, 754 (Bankr. W.D.Va. 2001)). As the (sic) Judge Smith stated, the majority of courts have found that the word "refused" does in fact require the showing of a willful or intentional act, not merely the showing of a mistake or the inability to comply. *Id*. (citing numerous cases). A minority of courts, however, have found that an action to revoke discharge brought under Sections 727(d)(3) and 727(a)(6) should be treated as a civil contempt proceeding, thus negating the requirement for a showing of willfulness or intent. *Id*. (*citing Hunter v. Magack (In re Magack)*, 247 B.R. 406, 409-10 (Bankr. N.D.Ohio 1999); *United States v. Richardson (In re Richardson)*, 85 B.R. 1008, 1011 (Bankr. W.D.Mo. 1988)). The United States District Court concluded that the majority approach was correct, and held that

>> [A] trustee seeking a revocation of discharge must establish that the debtor willfully and intentionally

refused to obey the court's order. Thus, the trustee must show more than a mere failure to obey the court's order that results from inadvertence, mistake, or inability to comply; he must demonstrate some degree of volition or willfulness on the part of the debtor.

*Id.* (*citing Gillman v. Green (In re Green)*, 335 B.R. 181, 184 (Bankr. D.Utah 2005)). The Court further stated that "the trustee may meet his burden by showing that the debtor received the order in question and failed to comply with its terms." *Id.* (*citing Missouri ex rel. Nixon v. Foster (In re Foster)*, 335 B.R. 709, 716 (Bankr.W.D.Mo. 2006); *LaBarge v. Ireland (In re Ireland)*, 325 B.R. 836, 838 (Bankr. E.D.Mo. 2005); *Katz v. Araujo (In re Araujo)*, 292 B.R. 19, 24 (Bankr. D.Conn. 2003); *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 349-50 (Bankr. E.D.Mich. 1999)). "'Such a showing then imposes upon the debtor an obligation to explain [her] non-compliance.'" *Id.* (*quoting In re Foster*, 335 B.R. at 716).

IV

Having determined that the district court correctly held that the revocation of Jordan's discharge on the basis of a refusal to comply with the court's order requires that the refusal be wilful and intentional, we must now determine whether the revocation itself was supported by the evidence. In so doing, we note that the bankruptcy court found that intent was not an issue and that Jordan's actions were not wilful.

We also note that the administrative order with which Jordan was found to have refused to comply does not specifically prohibit the "refinancing" of property. Rather, the order prohibits "selling, transferring, removing, destroying, mutilating or concealing" property. While the refinancing of property may technically involve a transfer in connection with the execution of the deed of trust, such would not be apparent to the typical debtor. The burden to clarify such a restriction, however, should not rest upon the more business-savvy drafters of the administrative order rather than expect a layperson such as Ms. Jor-

dan to read between the lines and draw her own logical conclusions. Simply put, the administrative order drafters should have anticipated — and specifically prohibited — such action because refinancing is one of the most common methods by which a homeowner may affect the equity in his or her home.

Accordingly, based upon the record in this case, Jordan's failure to comply with the order cannot be said to be wilful, especially in light of the bankruptcy court's finding that such wilfulness did not exist.

*AFFIRMED IN PART;*
*REVERSED IN PART*

MICHAEL, Circuit Judge, concurring in part and dissenting in part:

I concur in parts I-III of the majority opinion. However, I respectfully dissent from part IV because, under the principles of law the majority sets forth in part III, the undisputed facts establish that Alison Jordan willfully violated the bankruptcy court's order when she refinanced her home. Therefore, I would affirm the bankruptcy court's decision to revoke Jordan's discharge.

I.

Jordan filed her Chapter 7 bankruptcy petition on January 7, 2005. Less than a week later, the court sent Jordan an administrative order setting forth her duties and responsibilities as a debtor. The order informed Jordan that she was not permitted to "sell, transfer, remove, destroy, mutilate or conceal any of [her] property" and that she was required to "make all or any part [of her property] available to the trustee, when requested to do so." J.A. 14. The order also informed her that she was required to "cooperate with the Trustee as is necessary to enable the Trustee to perform the Trustee's duties as required by law." J.A. 14. Finally, the order made clear that the duties and responsibilities imposed upon Jordan did not end automatically with a discharge: "You shall obey all orders of the [bankruptcy court] and your responsibility for doing so does not cease even after a discharge is granted. The discharge does not conclude your bankruptcy case. A discharge may be revoked, for cause." J.A. 14.

Seven days after receiving her discharge, Jordan refinanced her home. In doing so, she increased the outstanding mortgages on the property by more than $30,000, eliminated all of her equity in the property, and received $15,000 in cash. Before acting to refinance her home, Jordan did not consult with the bankruptcy trustee or seek court approval. The refinancing was, as the majority notes, a transfer of property that violated the court's administrative order. *Ante* at 7. Ultimately, the bankruptcy court granted the trustee's motion to revoke Jordan's discharge based on her noncompliance with the order, and the district court affirmed.

## II.

The only question presented by this appeal is whether Jordan's violation of the bankruptcy court's administrative order constituted a refusal to obey that order within the meaning of 11 U.S.C. § 727(a)(6)(A). If Jordan violated § 727(a)(6)(A), the court did not err by revoking her discharge pursuant to § 727(d)(3). As the majority states, proving that a debtor refused to obey a court order requires the showing of a willful or intentional violation of the order, as opposed to mere noncompliance. *Ante* at 5. A party seeking to prove willfulness may meet its initial burden by demonstrating that "the debtor received the order in question and failed to comply with its terms." *Ante* at 5. The burden then shifts, requiring the debtor to prove that the noncompliance resulted from inadvertence, mistake, or impossibility, rather than from an intentional and willful act. *See ante* at 5-6.

The facts establish that Jordan refused to obey the court order by refinancing her property. Because Jordan does not contest that she had knowledge of the order or that her refinancing violated its terms, the burden is on her to explain her noncompliance. She has not carried this burden. Her only contention appears to be that she did not realize that refinancing her property would violate the order. This contention is irrelevant because a finding of willfulness in this context does not require a showing that Jordan acted with malice or knew in advance that the refinancing would violate the court order.

The majority's conclusion in part IV — that Jordan's violation was not willful and intentional — relies on two factors, but neither provides adequate support. First, the majority relies on the absence of the

word "refinance" in the administrative order's list of prohibited actions. The absence of this particular word, however, does not excuse Jordan's violation. As the majority recognizes, the act of refinancing violated the order's requirement that Jordan not "transfer . . . any of [her] property." J.A. 14; *ante* at 7. Even if we assumed that Jordan did not realize that her action was wrongful, this fact is not relevant to a finding of willfulness for purposes of § 727(a)(6)(A), as explained below. Notably, though, Jordan's claim that she was unaware that refinancing would violate the court's order is undercut to a significant extent because she refinanced only a few days after her discharge became final. The timing suggests she was aware that refinancing was prohibited but assumed (erroneously) that her obligations ended upon discharge.

Second, the majority relies on the bankruptcy court's findings that "intent was a non-issue" and that Jordan was not "willfully uncooperative with the trustee." J.A. 49-50; *see ante* at 7-8. These findings cannot refute the common sense conclusion that Jordan acted willfully when she refinanced her property. To begin with, the bankruptcy court did not address whether the refinancing was a willful act; rather, it found only that Jordan was not "willfully uncooperative with the trustee." J.A. 49. Moreover, a finding that the refinancing was not willful would have been clear error in this case. According to Black's Law Dictionary, "willful" means "[v]oluntary and intentional, but not necessarily malicious." *Black's Law Dictionary* 1630 (8th ed. 2004). But Black's recognizes that the term has been applied differently in different contexts: some courts hold that the term means "intentionally or purposely as distinguished from accidentally or negligently and does not require any actual impropriety," while others have required "a bad purpose or evil intent." *Id.* (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 875-76 (3d ed. 1982)). In the context of § 727(a)(6)(A), however, courts have consistently applied a definition of willfulness that does not require a showing that the debtor acted with malice or with the specific intent to violate a court order. Indeed, the majority acknowledges that the law requires only that the debtor's failure to comply arise from an intentional act rather than from negligence or the inability to comply. *Ante* at 7 (willfulness not established if the failure to comply with a court order "results from inadvertence, mistake, or inability to comply"); *see also* 6 *Collier on Bankruptcy*, ¶ 727.09 (Alan N. Resnick & Henry J. Sommer

eds., 15th ed. rev. 2007) (contrasting "wilful, intentional disobedience or dereliction" with a "failure to comply . . . due to inability to comply, inadvertence or mistake").

Although the majority accurately sets forth the law, it then erroneously concludes that Jordan did not act willfully. Jordan does not dispute that she had notice of the order, nor does she contend that she was unable to comply with the order. And, as explained above, the trustee was not required to show that Jordan acted with the specific intent to violate the order or even that she knew her action was wrongful at the time she refinanced her property. Instead, the trustee was required to show simply that Jordan intentionally and willfully refinanced her home and that the refinancing violated the terms of the order. If Jordan was uncertain about whether refinancing would violate the order, she had an obligation to resolve the uncertainty by consulting with the trustee or, if necessary, by seeking court approval before taking action. Because the record establishes that Jordan willfully violated the bankruptcy court's order, I would affirm the revocation of her discharge.