Affirmed in part; reversed in part by published opinion. Chief District Judge BAILEY wrote the opinion, in which Judge GREGORY joined. Judge MICHAEL wrote a separate opinion concurring in part and dissenting in part.
BAILEY, Chief District Judge:
In this case, we are asked to determine the level of intransigence necessary to support the revocation of a discharge in bankruptcy under 11 U.S.C. § 727(a)(6). Finding that the district court applied the proper legal standard, but erred in the application of that standard to the appellant, we affirm in part and reverse in part.
I
Allison Marie Jordan (Jordan) filed her Chapter 7 bankruptcy petition on January 7, 2005. Tom C. Smith, Jr. (Trustee) was duly appointed as Trustee. On January 10, 2005, the bankruptcy court issued a standard administrative order to Jordan. Among the provisions of the administrative order were the following:
• You shall not sell, transfer, remove, destroy, mutilate or conceal any of *432 your property, and you shall make all or any part thereof available to the Trustee, when requested to do so.
• You shall not turn over any of your property to any creditor or party in interest without the bankruptcy Trustee’s knowledge and consent, unless so ordered by the United States Bankruptcy Court.
• You shall cooperate with the Trustee as is necessary to enable the Trustee to perform the Trustee’s duties as required by law.
• You shall obey all orders of the United States Bankruptcy Court and your responsibility for doing so does not cease even after a discharge is granted. The discharge does not conclude your bankruptcy case. A discharge may be revoked, for cause.
The first meeting of creditors was held on February 17, 2005. At the meeting, as is customary in the District, the debtor submitted to the Trustee a comparative market analysis showing the fair market value of Jordan’s home in Virginia Beach, Virginia (the Property) to be $225,000. Jordan also submitted to the Trustee a liquidation analysis showing that after deductions for the balances owed on the first and second mortgages and a 10% allowance for the costs of sale, the Property had an equity of $4,960, which Jordan claimed as exempt. The Trustee accepted this documentation without comment or request for additional information.
The Trustee also obtained a market analysis for the Property, which indicated a property value of $250,000. The Trustee performed his own liquidation analysis, which showed that after paying off liens, cost of sale, Trustee’s commission, and the $5,000 exemption, the Property would net $1,264 at sale. Based upon that analysis, the Trustee determined not to market the property because the potential net recovery was too little to risk a sale. •
On motion of the United States Trustee, the bankruptcy court entered an order on May 25, 2005, which extended the grant of Jordan’s discharge until June 17, 2005. According to the motion, the extension was required to allow the Trustee additional time to investigate Jordan’s financial condition and the accuracy of her reported income. That motion did not involve the Property. On June 24, 2005, Jordan was granted a discharge.
On July 1, 2005, Jordan, who had lost her business and was unemployed, refinanced her home, paying off the first and second mortgages and receiving approximately $15,000, which she used for living expenses. A new deed of trust in the amount of $231,000 was recorded in connection with the refinance. Jordan refinanced without the knowledge or consent of the Trustee or the bankruptcy court.
On July 6, 2005, Maxwell Edwards (Edwards), who was listed in Jordan’s schedules as an unsecured creditor, filed a proof of claim as a secured creditor in the amount of $5,696. On November 2, 2005, the Trustee filed an objection to the Edwards claim, but withdrew his objection on November 8, 2005. Jordan was not advised of the reason for the objection or the withdrawal thereof.
In November of 2005, the Trustee received an offer to purchase the Property from Edwards’ attorney, without the involvement of a real estate agent, for the sum of $227,000. The Trustee filed an application to sell the Property and, in the application, estimated a net recovery for unsecured creditors. Upon learning that the Property had been refinanced for an amount in excess of the Edwards offer, the Trustee withdrew the sale application and filed a complaint for the revocation of the discharge for failure to comply with the *433 bankruptcy court’s order directing her to cooperate with the Trustee in the administration of the estate.
Jordan filed a timely response to the complaint, and, at the pretrial conference, the parties agreed that there were no facts in dispute. On June 12, 2006, the bankruptcy court issued its Memorandum Opinion and Order revoking Jordan’s discharge. Smith v. Jordan, 356 B.R. 651 (Bankr.E.D.Va.2006). In the opinion, the bankruptcy court found that Jordan was not wilfully uncooperative with the Trustee, but found that under 11 U.S.C. § 727(a)(6)(A) intent was a “non-issue.”
Jordan then filed a timely appeal to the district court, which, in an opinion entered September 26, 2006, affirmed the bankruptcy court. Jordan v. Smith, 356 B.R. 656 (E.D.Va.2006).
II
“Because the district court ‘act[ed] in its capacity as a bankruptcy appellate court, we review the bankruptcy court’s decision independently.’ Banks v. Sallie Mae Servicing Corp. (In re Banks), 299 F.3d 296, 300 (4th Cir.2002). We review the bankruptcy court’s factual findings for clear error and its legal conclusions de novo. See Kielisch v. Educational Credit Mgmt. Corp. (In re Kielisch), 258 F.3d 315, 319 (4th Cir.2001).” In re Ekenasi, 325 F.3d 541, 544 (4th Cir.2003).
III
The district court correctly found that a Trustee seeking a revocation of a discharge under 11 U.S.C. § 727(a)(6)(A) must establish that the debtor wilfully and intentionally refused to obey the court’s order. Under 11 U.S.C. § 727(a)(6)(A), a bankruptcy court “shall grant the debtor a discharge, unless the debtor has refused to obey any lawful order of the court, other than an order to respond to a material question or to testify.”
Revocation of a debtor’s discharge is an extraordinary remedy. Miller v. Kasden (In re Kasden), 209 B.R. 239, 241 (8th Cir.BAP1997). “Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a ‘fresh start.’ ” Grochocinski v. Eckert (In re Eckert), 375 B.R. 474, 478 (Bankr.N.D.Ill.2007), quoting State Bank of India v. Kaliana (In re Kaliana), 202 B.R. 600, 603 (Bankr.N.D.Ill.1996). “The statute is construed strictly against the party seeking revocation and liberally in the debtor’s favor.” Pierce v. Fuller (In re Fuller), 356 B.R. 493, 495 (Bankr.D.S.D.2006), citing Kaler v. Olmstead (In re Olmstead), 220 B.R. 986, 993 (Bankr.D.N.D.1998).
“The term used in § 727(a)(6)(A) is ‘refused’ not ‘failed.’ Accordingly, the Court must find that the Debtors’ lack of compliance with the relevant court order was willful and intentional. LaBarge v. Ireland (In re Ireland), 325 B.R. 836, 838 (Bankr.E.D.Mo.2005); Cummins v. Hays (In re Cummins), 166 B.R. 338, 358 (Bankr.W.D.Ark.1994); 3 Norton Bankruptcy Law and Practice 2D, § 74:16, p. 74-35 (1994). The party objecting to discharge satisfies this burden by demonstrating the debtor received the order in question and failed to comply with its terms. Ireland, 325 B.R. at 838; Katz v. Araujo (In re Araujo), 292 B.R. 19, 24 (Bankr.D.Conn.2003). Such a showing then imposes upon the debtor an obligation to explain his non-compliance. Associates Commercial Corp. v. Reavis (In re Reavis), 92 B.R. 380, 383 (Bankr.W.D.Mo.1988); United States of America v. Richardson (In re Richardson), 85 B.R. 1008, 1011 (Bankr.W.D.Mo.1988); 6 Collier on Bankruptcy, ¶ 727.09[1], p. 727-50 (15th ed. *434 Rev.2003).” Pierce v. Fuller (In re Fuller), 356 B.R. 493, 495 (Bankr.D.S.D.2006), quoting State of Missouri v. Foster, 335 B.R. 709, 716 (Bankr.W.D.Mo.2006).
In Marcus v. Jeffries (In re Jeffries), 356 B.R. 681 (Bankr.E.D.Va.2006), the bankruptcy court discussed the status of law on this issue and, particularly, the district court decision under review in this case:
Section 727(a)(6)(A) thus provides for the revocation of a debtor’s discharge if that debtor “refuses” to obey a lawful Court order. The term “refuse” is not defined in the Bankruptcy Code. Gillman v. Green (In re Green), 335 B.R. 181, 183 (Bankr.D.Utah 2005). A recent opinion in this District discusses the split among the various courts with regard to whether an action to revoke discharge pursuant to Sections 727(d)(3) and 727(a)(6) requires a showing of willfulness or intent in refusing to obey a Court order. See Jordan [v. Smith], 356 B.R. 656, at 659-60 (citing In re Araujo, 292 B.R. at 23; In re Gentry, 275 B.R. 747, 754 (Bankr.W.D.Va.2001)). As the (sic) Judge Smith stated, the majority of courts have found that the word “refused” does in fact require the showing of a willful or intentional act, not merely the showing of a mistake or the inability to comply. Id. (citing numerous cases). A minority of courts, however, have found that an action to revoke discharge brought under Sections 727(d)(3) and 727(a)(6) should be treated as a civil contempt proceeding, thus negating the requirement for a showing of willfulness or intent. Id. (citing Hunter v. Magack (In re Magack), 247 B.R. 406, 409-10 (Bankr.N.D.Ohio 1999); United States v. Richardson (In re Richardson), 85 B.R. 1008, 1011 (Bankr.W.D.Mo.1988)). The United States District Court concluded that the majority approach was correct, and held that
[A] trustee seeking a revocation of discharge must establish that the debtor willfully and intentionally refused to obey the court’s order. Thus, the trustee must show more than a mere failure to obey the court’s order that results from inadvertence, mistake, or inability to comply; he must demonstrate some degree of volition or willfulness on the part of the debt- or.
Id. (citing Gillman v. Green (In re Green), 335 B.R. 181, 184 (Bankr.D.Utah 2005)). The Court further stated that “the trustee may meet his burden by showing that the debtor received the order in question and failed to comply with its terms.” Id. (citing Missouri ex rel. Nixon v. Foster (In re Foster), 335 B.R. 709, 716 (Bankr.W.D.Mo.2006); LaBarge v. Ireland (In re Ireland), 325 B.R. 836, 838 (Bankr.E.D.Mo.2005); Katz v. Araujo (In re Araujo), 292 B.R. 19, 24 (Bankr.D.Conn.2003); Solomon v. Barman (In re Barman), 237 B.R. 342, 349-50 (Bankr.E.D.Mich.1999)). “‘Such a showing then imposes upon the debtor an obligation to explain [her] non-compliance.’ ” Id. (quoting In re Foster, 335 B.R. at 716).
IV
Having determined that the district court correctly held that the revocation of Jordan’s discharge on the basis of a refusal to comply with the court’s order requires that the refusal be wilful and intentional, we must now determine whether the revocation itself was supported by the evidence. In so doing, we note that the bankruptcy court found that intent was not an issue and that Jordan’s actions were not wilful.
*435 We also note that the administrative order with which Jordan was found to have refused to comply does not specifically prohibit the “refinancing” of property. Rather, the order prohibits “selling, transferring, removing, destroying, mutilating or concealing” property. While the refinancing of property may technically involve a transfer in connection with the execution of the deed of trust, such would not be apparent to the typical debtor. The burden to clarify such a restriction, however, should not rest upon the more business-sawy drafters of the administrative order rather than expect a layperson such as Ms. Jordan to read between the lines and draw her own logical conclusions. Simply put, the administrative order drafters should have anticipated — and specifically prohibited — such action because refinancing is one of the most common methods by which a homeowner may affect the equity in his or her home.
Accordingly, based upon the record in this case, Jordan’s failure to comply with the order cannot be said to be wilful, especially in light of the bankruptcy court’s finding that such wilfulness did not exist.

AFFIRMED IN PART; REVERSED IN PART