**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RONALD HUGH STANDIFERD;
BETTY ANN STANDIFERD,

    Debtors.

_____

RONALD HUGH STANDIFERD;
BETTY STANDIFERD,

    Appellants,

v.

UNITED STATES TRUSTEE,

    Appellee.

No. 09-2238

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. 1:09-CV-00083-RB-RLP)**

George M. Moore, Moore, Berkson & Gandarilla, P.C., Albuquerque, New Mexico, for Appellants.

Wendy Cox, Trial Attorney (Ramona D. Elliott, General Counsel, P. Matthew Sutko, Associate General Counsel, Richard Wieland, United States Trustee, Ronald E. Andazola, Assistant United States Trustee, Albuquerque, New Mexico, with her on the brief), for Appellee.

Before **KELLY**, Circuit Judge, **TACHA**, and **HOLLOWAY**, Senior Circuit Judges.

**TACHA**, Circuit Judge.

Appellants Ronald and Betty Standiferd filed a Chapter 13 bankruptcy petition, obtained confirmation of their Chapter 13 plan, and then willfully violated the provisions of the confirmation order which required them to keep the trustee apprised of their post-petition financial condition. When the trustee sought to dismiss the Standiferds' case based on their recalcitrance, the Standiferds converted their case to Chapter 7. The trustee then filed a motion seeking to deny the Standiferds discharge based on their pre-conversion misconduct. The bankruptcy court granted the trustee's motion, holding that denial of discharge was appropriate under both 11 U.S.C. § 727(a)(2)(B) and (a)(6)(A). The district court affirmed. On appeal, we must determine whether, in a bankruptcy case that has been converted from Chapter 13 to Chapter 7, a debtor may be denied discharge under § 727(a)(6)(A) based on his pre-conversion refusal to obey the Chapter 13 confirmation order.[1] We take jurisdiction under 28 U.S.C. §§ 158(d) and 1291 and AFFIRM.

## I. BACKGROUND

The material facts of this case are not disputed. On December 28, 2000,

---

[1]Because we hold that the Standiferds were properly denied discharge under § 727(a)(6)(A), we need not address the district court's alternative holding that denial of discharge was also appropriate under § 727(a)(2)(B).

the Standiferds filed a Chapter 13 bankruptcy petition. They submitted their initial Chapter 13 plan roughly two weeks later and an amended plan nearly a month after that. The amended plan proposed to pay 100% of the allowed unsecured claims from the Standiferds' post-petition income and other sources. Specifically, the plan proposed that the Standiferds would make $470.00 monthly payments to the trustee, contribute all their tax refunds to the plan, and contribute $400,000 to the plan from "receivables."[2] In addition, the plan required the Standiferds to provide the trustee with monthly operating reports if they operated their own business.

The bankruptcy court confirmed the plan on January 15, 2002. The confirmation order contained two mandates which are particularly relevant to this appeal. First, in accordance with the Standiferds' proposed plan, the confirmation order required that "if the Debtors engage in business, monthly operating reports shall be filed." Second, the confirmation order provided that "Debtors shall timely file all tax returns due during the life of the plan, and send a copy to the trustee." The Standiferds received the confirmation order and understood its terms.

In May or June 2002, Mr. Standiferd obtained employment with STKX Construction, Inc. ("STKX"). Shortly thereafter, Mr. Standiferd and STKX

---

[2]The "receivables" were supposed to come from litigation against one of Mr. Standiferd's former business partners. Ultimately, however, the Standiferds dropped the lawsuit in 2003.

formed a partnership called S&S Joint Venture ("S&S"). Mr. Standiferd reported

$70,352 in income from S&S on his 2003 tax return, but he did not file monthly

operating reports or send a copy of his tax return to the trustee. Consequently,

the trustee sought to dismiss the Standiferds' case on May 16, 2003. The

bankruptcy court denied the trustee's motion to dismiss and allowed the

Standiferds to modify their plan. The plan modifications, however, did not

extinguish the confirmation order's requirement that the Standiferds file monthly

operating reports and copies of their tax returns with the trustee.

Thereafter, Mr. Standiferd continued to operate and profit from S&S

without sending the trustee monthly operating reports or copies of his tax returns.

Indeed, the Standiferds never informed the trustee about the formation or

operation of S&S, and they spent the majority of the profits they received from

the business on home improvements. On October 16, 2006, the trustee filed a

second motion to dismiss the Standiferds' case, citing, among other things, their

failure to provide copies of their tax returns. The Standiferds then voluntarily

converted their case to Chapter 7. *See* § 1307(a) ("The debtor may convert a case

under [] chapter [13] to a case under chapter 7 . . . at any time.").

At the time they converted their case, the Standiferds had not completed the

payments required by the plan. In fact, rather than paying 100% of the allowed

unsecured claims as the plan proposed, the Standiferds' unsecured debt nearly

tripled while they were proceeding under Chapter 13.

Following conversion, the trustee filed a complaint seeking to deny the Standiferds a discharge of their debts under various provisions of 11 U.S.C. § 727. On December 17, 2008, the bankruptcy court issued an order denying the Standiferds discharge under both § 727(a)(2)(B) and (a)(6)(A). The Standiferds appealed to the district court, where a magistrate judge recommended affirming the bankruptcy court's order. The district court adopted the magistrate's recommendation, and this appeal followed.

## II. DISCUSSION

A central purpose of the Bankruptcy Code is to give debtors a fresh start by discharging their preexisting debts. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007); *see also Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). The Code, however, does not dole out this substantial benefit indiscriminately. Rather, the opportunity for "a completely unencumbered new beginning" is reserved only for "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286–87 (quotations omitted); *In re Duncan*, 329 F.3d 1195, 1202 (10th Cir. 2003).

Under 11 U.S.C. § 727(a)(6)(A), the court may deny the debtor a discharge if "the debtor has refused, in the case . . . to obey any lawful order of the court other than an order to respond to a material question or to testify." The party objecting to discharge under this provision must demonstrate that "the debtor received the order in question and failed to comply with its terms." *In re Jordan*, 521 F.3d 430, 433 (4th Cir. 2008). The debtor then bears the burden of

explaining his non-compliance. *Id.* Ultimately, the court may not deny discharge under § 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful. *Id.*

The Standiferds do not dispute that they received and failed to comply with the confirmation order. Furthermore, they do not contend that their failure to provide the trustee with monthly operating reports and tax returns was anything other than willful. Rather, the Standiferds contend that § 727(a)(6)(A) is not applicable to their case because: (1) a Chapter 13 confirmation order is not a "lawful order of the court"; and (2) their refusal to obey the confirmation order occurred while their case was proceeding under Chapter 13.

To resolve the Standiferds' claims, we must interpret several provisions of the Bankruptcy Code. When interpreting a statute, our preeminent purpose "is to ascertain the congressional intent and give effect to the legislative will." *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008) (quotations omitted). We start by construing the relevant language of the Code according to its plain meaning. *See Center for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1267 (10th Cir. 2003) (quotations omitted). "In ascertaining the plain meaning of the statute, [we] must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.* (quotations omitted). "If the language is clear and unambiguous, the plain meaning of the statute controls." *Id.* (quotations omitted).

A.      A Chapter 13 Confirmation Order is a "Lawful Order of the Court"

The Code does not define what constitutes a "lawful order of the court" for

purposes of § 727(a)(6)(A).  Because Congress has not provided a specific

definition for this term, we look to the term's ordinary or common meaning.

*Smith v. United States*, 508 U.S. 223, 228 (1993).  As it is commonly used and

understood, the term "lawful order of the court" refers to any command, direction,

or instruction issued by a court which is permitted by law.  *See* Black's Law

Dictionary 892 (7th ed. 1999) (defining "lawful" as something which is

"permitted by law"); *see also id*. at 1123 (defining "order" as "[a] command,

direction, or instruction," or "[a] written direction or command delivered by a

court or judge").

Here, the relevant provisions of the confirmation order cannot be read as

anything other than the bankruptcy court's command that the Standiferds provide

the trustee with monthly operating reports and tax returns.  Order Confirming

First Amended Chapter 13 Plan and Avoiding Lien, at 2–4 ("IT IS FURTHER

ORDERED, ADJUDGED, AND DECREED that . . . if the Debtors engage in

business, monthly operating reports shall be filed . . . [and] Debtors shall timely

file all tax returns due during the life of the plan, and send a copy to the trustee.")

(emphasis in original).  Furthermore, the Code clearly permits bankruptcy courts

to issue such confirmation orders in Chapter 13 cases, and it prescribes

consequences for a debtor's refusal to obey them.  *See* § 1325(a); § 1307(c)

(providing that the trustee or a party in interest may seek to dismiss a Chapter 13 case or convert it to Chapter 7 "for cause, including . . . material default by the debtor with respect to a term of a confirmed plan"); *see also In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997) ("Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan."). Thus, interpreting the relevant statutory language according to its plain meaning, we easily conclude that the confirmation order in this case qualifies as a "lawful order of the court" for purposes of § 727(a)(6)(A). *See also In re Foster*, 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006) (holding that § 727(a)(6)(A) "clearly includes orders requiring the debtor to produce documents relating to his or her financial condition").

The Standiferds contend that this natural reading of the Code is belied by § 1307(a) and (b). Together, § 1307(a) and (b) provide the Chapter 13 debtor with an unwaivable right to either: (1) convert his case to Chapter 7 at any time; or (2) dismiss his Chapter 13 case altogether if it has not already been converted from a different chapter of the Code. *See* § 1307(a), (b). Relying on these provisions, the Standiferds argue that a Chapter 13 confirmation order cannot lawfully or meaningfully require the debtor to do anything because the debtor always retains the right to convert or dismiss the case if he chooses.

Only the most extraordinary showing of a contrary legislative intent can justify our departure from the plain meaning of the statutory language. *Garcia v.*

*United States*, 469 U.S. 70, 75 (1984). The fact that the Code permits a Chapter 13 debtor to stop complying with the provisions of a confirmation order and either convert his case to Chapter 7 or dismiss his bankruptcy case altogether does not reflect a clear legislative intent to make confirmation orders nugatory. Rather, § 1307(a) and (b) simply embody the Code's policy that a Chapter 13 debtor cannot, in most circumstances, be forced to continue proceeding under Chapter 13. As long as the debtor remains under Chapter 13, however, he must comply with the terms of the bankruptcy court's confirmation order.

For these reasons, we conclude that the bankruptcy court's confirmation order was a "lawful order of the court" for purposes of § 727(a)(6)(A).

B.    A Debtor's Pre-Conversion Misconduct May Support the Denial of Discharge Under § 727(a)(6)(A)

The Standiferds also argue that § 727(a)(6)(A) is inapplicable because their refusal to obey the confirmation order occurred before they converted their case to Chapter 7. The starting point for this argument is 11 U.S.C. § 103(b), which provides that "Subchapters I and II of Chapter 7 of this title apply only in a case under such chapter." Because § 727 is located in subchapter II of Chapter 7, the Standiferds correctly point out that § 727 is only applicable in a case that is proceeding under Chapter 7. But this fairly obvious limitation on § 727 does not, by itself, preclude the application of § 727(a)(6)(A) in this case. Indeed, at the time the bankruptcy court denied the Standiferds discharge under this provision,

their case was proceeding under Chapter 7.

The Standiferds next point to the specific language of § 727(a)(6)(A).  As noted above, discharge may be denied under § 727(a)(6)(A) only for a debtor's refusal, "*in the case*," to obey a lawful order of the court.  The Standiferds contend that when read in conjunction with § 103(b), this language limits the applicability of § 727(a)(6)(A) to a debtor's refusal, *in the Chapter 7 case*, to obey a lawful order of the court.  In other words, they contend that when a case is converted to Chapter 7 from another chapter of the Code, "the case," for purposes of § 727(a)(6)(A), includes only the proceedings that occur after conversion.

While this is one plausible way to construe §§ 103(b) and 727(a)(6)(A), it is also entirely reasonable to interpret "the case" as referring to both the pre- and post-conversion proceedings.  Indeed, neither § 103(b) nor § 727(a)(6)(A) directly addresses what constitutes "the case" following conversion to Chapter 7.  That question is answered by § 348, which is entitled "Effect of Conversion."

The Standiferds argue that § 348(f) reflects Congress' intent that, upon conversion from Chapter 13 to Chapter 7, the two phases of the bankruptcy case are treated as separate and distinct.  Generally, § 348(f) defines what constitutes property of the bankruptcy estate after a case is converted from Chapter 13 to another chapter of the Code.  According to the Standiferds, it is significant that when a case is converted from Chapter 13 to Chapter 7, the debtor's post-petition income, which is generally included in the Chapter 13 estate, *see* § 1306(a)(1),

does not become part of the converted Chapter 7 estate unless the debtor converts in bad faith. *Compare* § 348(f)(1)(A) ("[P]roperty of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor on the date of conversion.") (emphasis added), *with* § 348(f)(2) ("If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate *as of the date of conversion*.") (emphasis added); *see also In re Bell*, 225 F.3d 203, 217 (2d Cir. 2000). The Standiferds contend that because the Code treats the pre- and post-conversion estates differently, it also treats the two phases of the case as entirely separate.

The mere fact that a converted Chapter 7 estate and its predecessor Chapter 13 estate are comprised of different property, however, does not necessarily mean that conversion from Chapter 13 to Chapter 7 begins a separate bankruptcy case such that discharge may be denied in the converted case only for conduct that occurs post-conversion. Indeed, because § 348(f) is primarily concerned with the composition of the converted bankruptcy estate, it is, at best, minimally relevant to how the Code defines "the case" following a debtor's conversion from Chapter 13 to Chapter 7.

We find § 348(a) to be much more instructive on this point. Under § 348(a), the conversion of a case from one chapter of the Code to another

"constitutes an order for relief under the chapter to which the case is converted, but . . . does not effect a change in the date of the filing of the petition, *the commencement of the case*, or the order for relief."  § 348(a) (emphasis added). In other words, a converted case is commenced on the date the initial bankruptcy petition was filed, not on the date it was converted.  Thus, the plain language of § 348(a) clearly provides that, upon conversion, "the case" includes the proceedings that occur both before and after conversion.  Consequently, when a debtor converts his case from Chapter 13 to Chapter 7, discharge may be denied under § 727(a)(6)(A) based on the debtor's refusal to obey a lawful order of the court while the case was proceeding under Chapter 13.  *Cf. In re Langholf*, 37 B.R. 414, 419 (Bankr. N.D. Ill. 1984) ("[I]ndividual Chapter 11 Debtors . . . should know at the time they file a Chapter 11 case that their post-filing conduct could give rise to an Objection to Discharge under Section 727 . . . following conversion to Chapter 7."); *In re Yates*, 429 B.R. 675, 682 (Bankr. E.D. Mo. 2010) (denying discharge under § 727(a)(6)(A) in a case that had been converted from Chapter 12 to Chapter 7, based on the debtor's refusal to comply with an order of the court while the case was proceeding under Chapter 12); *In re Powers*, 112 B.R. 184, 191 (Bankr. S.D. Tex. 1989) (denying discharge under § 727(a)(6)(A) in a case that had been converted from Chapter 11 to Chapter 7, based on the debtor's refusal to comply with multiple orders of the court while the case was proceeding under Chapter 11).

In this case, the confirmation order plainly required the Standiferds to keep the trustee apprised of their post-petition financial condition by providing her with monthly operating reports and tax returns. These requirements ensured that the trustee and the Standiferds' creditors could meaningfully exercise their rights to seek greater payments under the plan if the Standiferds' disposable income increased post-petition. *See* § 1329(a)(1) ("At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to . . . increase . . . the amount of payments on claims of a particular class provided for by the plan."). To avoid the risk that they may be required to commit the fruits of their good fortune to their creditors, however, the Standiferds disregarded their obligations under the confirmation order and spent their increased income on home improvements. Although the trustee could only seek to dismiss or convert their case while it was proceeding under Chapter 13, *see* § 1307(c), once the Standiferds voluntarily converted their case to Chapter 7 the bankruptcy court could properly employ the various remedies for debtor misconduct that are available under that chapter.

Contrary to the Standiferds' assertions, the Code is not designed to allow a Chapter 13 debtor to avail himself of the Code's protections, willfully disobey the bankruptcy court's confirmation order by concealing post-petition income increases that could otherwise be used to pay creditors, and then, once his

misconduct is discovered, convert his case to Chapter 7 in order to obtain a guaranteed discharge of his debts. Rather, one of the Code's fundamental tenets is that the extraordinary benefit of discharge is available only for the honest but unfortunate debtor. *Grogan*, 498 U.S. at 286–87.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM.