*732 Simon E. Rodriguez ("Trustee") was appointed Chapter 7 trustee in the Debtor's bankruptcy case. The Trustee conducted the § 341 meeting of creditors on September 2, 2016 (the "§ 341 Meeting"). Ms. Weselis was not present at the § 341 Meeting. Rather, James Aab ("Mr. Aab") appeared as the Debtor's counsel of record at the § 341 Meeting. The Debtor testified that had not met Mr. Aab before the § 341 Meeting, and he was not aware that Mr. Aab would be representing him in connection with the § 341 Meeting.
At the § 341 Meeting, the Trustee questioned the Debtor about the payments he received from Bird Barrier. The Trustee requested a six-month accounting of the payments, an Internal Revenue Service Form 1099 ("Form 1099") from Bird Barrier, and that any further payments from Bird Barrier be forwarded to the Trustee. The Debtor expressed a clear intent to retain his interest in the clip and work with the Trustee to do so.
In November 2016, the Trustee received two Bird Barrier payments from the Debtor, totaling $ 1,273.25.
The Debtor received his discharge on November 7, 2016.
III. Post-Discharge Bird Barrier Payments
The Debtor testified that based on his communications with Ms. Weselis, he believed that his bankruptcy case was "done and over" after he received his discharge. As a result, the Debtor did not forward any further Bird Barrier payments to the Trustee after the entry of discharge.[2] The Debtor also did not provide the Trustee with the requested accounting or Form 1099 from Bird Barrier.
The Debtor received and deposited into his Chase bank account the following payments from Bird Barrier, totaling $ 4,488.31, after he received his discharge:
• $ 345.45, deposited on November 16, 2016;
• $ 427.19, deposited on December 12, 2016;
• $ 372.60, deposited on January 18, 2017;
• $ 367.91, deposited on February 21, 2017;
*733 • $ 649.67, deposited on March 14, 2017;
• $ 772.66, deposited on April 11, 2017;
• $ 894.34, deposited on May 15, 2017; and
• $ 658.49, deposited on June 15, 2017.
The Debtor received no further payments from Bird Barrier after the June 2017 payment.
IV. The Motion for Turnover
On April 28, 2017, the Trustee filed a Motion for Turnover, requesting, among other things, that the Debtor turn over the Bird Barrier payments and accounting (the "Motion for Turnover"). The Debtor was properly served with the Motion for Turnover. The Debtor testified that because he believed his bankruptcy case to be completed, he did not review the Motion for Turnover. The Court granted the Motion for Turnover on May 17, 2017, and ordered the Debtor to turn over said information and property no later than May 27, 2017 (the "Turnover Order"). The Debtor testified that he also did not review the Turnover Order.
V. The Motion to Withdraw
After the Trustee filed the Motion for Turnover, Ms. Weselis contacted the Debtor regarding his failure to provide the Trustee with the Bird Barrier payments and accounting. The Debtor testified that he informed Ms. Weselis that he wished to retain his interest in the clip and no longer wanted to proceed with the bankruptcy case if it meant surrendering said interest.
Ms. Weselis subsequently moved to withdraw as the Debtor's counsel on May 2, 2017 (the "Motion to Withdraw"). The grounds cited in the Motion to Withdraw were as follows:
Debtor has not yet complied with the Chapter 7 Trustee's request for turnover of his 2016 tax returns, all payments received from Bird Barrier post-filing and other information relating to Bird Barrier. Debtor has expressly requested counsel withdraw as his attorney from his case.
The Debtor was properly served with and did not contest the Motion to Withdraw. The Court granted the Motion to Withdraw on May 11, 2017.
VI. The Adversary Proceeding Against Bird Barrier
In early November 2016, the Trustee contacted Bird Barrier and requested that all future payments due to the Debtor be forwarded to the Trustee. When he failed to receive any payments from Bird Barrier, the Trustee commenced an adversary proceeding against Bird Barrier, Adv. Pro. No. 17-01248-JGR, on June 14, 2017, seeking turnover of all payments due to the Debtor since November 1, 2016.
After the Trustee commenced the action against Bird Barrier, Bird Barrier continued selling the clip but ceased making monthly payments to the Debtor. The Debtor testified that when he stopped receiving payments from Bird Barrier, he contacted the company and was informed that he would no longer receive payments due to the Trustee's action.
In mid-October 2017, the Trustee and Bird Barrier entered into a settlement agreement, whereby Bird Barrier would pay the Trustee $ 5,750.00. The accounting that Bird Barrier provided to the Trustee in connection with the settlement agreement confirmed that no further payments were made to the Debtor after June 2017.
The Trustee moved for approval of the settlement agreement on November 3, 2017 (the "Motion to Approve"). The Certificate of Service reflects that the Debtor was properly served with the Motion to Approve. The settlement agreement was *734 approved by this Court on November 28, 2017 (the "Approval Order"). The Certificate of Notice issued by the Clerk's Office reflects that the Debtor received proper notice of the Approval Order.
The adversary proceeding against Bird Barrier was subsequently dismissed on December 7, 2017.
VII. The Instant Adversary Proceeding
Prior to reaching the settlement with Bird Barrier, the Trustee commenced the instant adversary proceeding against the Debtor on October 9, 2017. The Debtor testified that he was not aware of his liability under the Turnover Order until the Trustee filed this action. The Debtor's answer in this action was originally due on November 8, 2017-after the Trustee and Bird Barrier reached the settlement and the Trustee filed the Motion to Approve same.
The Trustee seeks revocation of the Debtor's discharge under 11 U.S.C. §§ 727(d)(2) and/or 727(d)(3), and turnover of $ 5,313.27 in post-petition Bird Barrier payments pursuant to 11 U.S.C. § 542.
The Debtor argues that he lacked the knowing and fraudulent intent necessary for revocation under 11 U.S.C. § 727(d)(2), and that he did not refuse to comply with the Turnover Order to warrant revocation under 11 U.S.C. § 727(d)(3). With respect to turnover, the Debtor maintains that, to the extent that any further Bird Barrier payments must be turned over, only the May and June 2017 payments, totaling $ 1,552.83, are recoverable because they were the only payments in the Debtor's possession at the time the Motion for Turnover was filed and shortly after it was granted.
A trial was held in this matter on October 10, 2018. The Debtor testified that based on his communications with Ms. Weselis, he believed that his bankruptcy case was completed after he received his discharge. The Debtor further testified that it was his understanding that he was only required to forward Bird Barrier payments to the Trustee until his case was completed. The Debtor also testified that after he contacted Bird Barrier and was informed of the Trustee's action against the company, he believed that the Trustee's recovery from Bird Barrier meant that he no longer owed the Trustee any funds.
CONCLUSIONS OF LAW
I. The Plaintiff's First Claim Under 11 U.S.C. § 727(d)(2)
Under 11 U.S.C. § 727(d)(2), the court shall revoke a Chapter 7 discharge if:
the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee....
To obtain relief under § 727(d)(2), "a plaintiff must prove that the debtor acquired or became entitled to acquire property of the estate and knowingly and fraudulently failed to report or deliver the property to the trustee...." Bowman v. Belt Valley Bank (In re Bowman) , 173 B.R. 922, 925 (9th Cir. BAP 1994). "Both elements must be met and the plaintiff must prove that the debtor acted with the knowing intent to defraud." Id. (citing In re Yonikus , 974 F.2d 901, 905 (7th Cir.1992) ). "[B]ecause revoking a discharge is an extraordinary remedy, § 727(d) should be construed liberally in favor of the debtor and strictly against those objecting to discharge."
*735 Yules v. Gillis (In re Gillis) , 403 B.R. 137, 144 (1st Cir. BAP 2009) (citation omitted).
It is difficult to discern a knowing intent to defraud on the part of a debtor whose failure to report and deliver property resulted from a reasonable belief that his bankruptcy case was completed. See In re Reid , No. 02-34592, 2006 WL 2475332 (Bankr. W.D. Ky. Aug. 25, 2006), aff'd, appeal dismissed sub nom. Schilling v. Reid , 372 B.R. 1 (W.D. Ky. 2007). In Reid , the debtor disclosed certain real property in her bankruptcy schedules. Id. at *1. Upon receiving her discharge order, she contacted her counsel and requested an explanation as to the meaning of the document. Id. Her counsel explained that it "meant the case was over." Id. After the entry of her discharge, but before her case was closed, the debtor sold the real property and retained the sale proceeds. Id.
The Chapter 7 trustee subsequently filed a complaint under § 727(d)(2), seeking to revoke the debtor's discharge and recover the sale proceeds. Id. at *2. Dismissing the complaint, the court concluded that the trustee failed to prove that the debtor's actions with respect to the sale of the property were knowing and fraudulent. Id. at *3. The court found that the debtor had "good reason to believe that her case was over and that she could freely transfer the property." Id. Specifically, the debtor had received her discharge and was informed by her counsel that the discharge order meant that her case was over. Id.
Here, as in Reid , the record establishes that the Debtor had good reason to believe that his bankruptcy case was completed. The Debtor forwarded two Bird Barrier payments to the Trustee after the § 341 Meeting, which presumably were the payments that the Debtor received from Bird Barrier in the two months between the § 341 Meeting and the entry of his discharge. The Debtor testified that based on his communications with Ms. Weselis, he believed that his bankruptcy case was completed after he received his discharge. The Debtor further testified that it was his understanding that he was only required to forward Bird Barrier payments to the Trustee until his case was completed. Although the Debtor was properly served with the Motion for Turnover and the Turnover Order after the entry of his discharge, the Debtor testified that he did not review them because he believed that his case was completed.
The Debtor testified that he was not aware that he was still required to forward his Bird Barrier payments to the Trustee until he was contacted by Ms. Weselis to discuss the Motion for Turnover. The Debtor testified that he informed Ms. Weselis that he wished to retain his interest in the clip and no longer wanted to proceed with the bankruptcy case if it meant surrendering said interest. Instead of diligently representing the Debtor and resolving the problem, Ms. Weselis responded by moving to withdraw as the Debtor's counsel, and the Debtor proceeded with his case pro se . First after the entry of his discharge and his discussion with Ms. Weselis regarding the same, and then after he expressed to Ms. Weselis that he no longer wanted to proceed with the case, the Debtor believed that his bankruptcy case was completed.
The Debtor testified that he was not aware of his liability under the Turnover Order until the Trustee filed the instant action, wherein the Trustee seeks turnover of $ 5,313.27. The Debtor also testified that when he stopped receiving monthly payments from Bird Barrier, he contacted the company to inquire as to why. The Debtor testified that at that time, Bird Barrier informed him that he would no longer receive payments due to the Trustee's action against Bird Barrier, wherein *736 the Trustee recovered $ 5,750.00. The Debtor testified that based on his conversation with Bird Barrier, he believed that the Trustee's direct recovery from Bird Barrier in an amount similar to that sought in the instant action meant that he no longer owed the Trustee any funds.
The Court finds that the Debtor's testimony is credible. At two critical junctures in his bankruptcy case-the § 341 Meeting and the filing of the Motion for Turnover-the Debtor was abandoned by Ms. Weselis, the counsel that he had retained to represent him. The Debtor is not an attorney, nor does he possess any specialized knowledge of bankruptcy law. As such, he acted under the reasonable understanding that he was relieved from the obligation to provide his Bird Barrier payments to the Trustee because (i) his bankruptcy case was closed, and (ii) the Trustee recovered an amount similar to that sought in the instant action directly from Bird Barrier. Thus, the Trustee has failed to prove that the Debtor's failure to report and deliver the post-discharge Bird Barrier payments was knowing and fraudulent.
II. The Plaintiff's Second Claim Under 11 U.S.C. § 727(d)(3)
Under 11 U.S.C. § 727(d)(3), the court shall revoke a Chapter 7 discharge if "the debtor committed an act specified in subsection (a)(6)." Subsection (a)(6) is implicated, in pertinent part, where "the debtor has refused, in the case...to obey any lawful order of the court, other than an order to respond to a material question or to testify...." 11 U.S.C. § 727 (a)(6)(A).
To prevail under § 727(a)(6)(A), the plaintiff "must demonstrate that the debtor received the order in question and failed to comply with its terms." Standiferd v. U.S. Tr. , 641 F.3d 1209, 1212 (10th Cir. 2011) (citation and internal quotation marks omitted). The burden then shifts to the debtor to explain his non-compliance. Id. "Ultimately, the court may not deny discharge under § 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful." Id. ; see also Martinez v. Los Alamos Nat'l Bank (In re Martinez) , 126 F. App'x 890, 896 (10th Cir. 2005) (addressing willfulness under § 727(a)(6)(C) and noting that the court "must find that the disobedience was willful or intentional") (citations and internal quotation marks omitted). Willfulness is "more than a mere failure to obey a lawful court order." In re Green , 335 B.R. 181, 184 (Bankr. D. Utah 2005).
Here, the Trustee has demonstrated that the Debtor failed to comply with the Turnover Order. What the Trustee has not proven, however, is that the Debtor's non-compliance was willful or intentional. Although the Debtor was properly served with the Motion for Turnover and the Turnover Order, he testified that he did not review them because he believed that his case was completed. The Debtor testified that he was not aware of his liability under the Turnover Order until the Trustee filed the instant action. The Debtor also testified that based on his conversation with Bird Barrier, he believed that the Trustee's direct recovery from Bird Barrier in an amount similar to that sought in the instant action meant that he no longer owed the Trustee any funds.
The Court finds that the Debtor's testimony is credible. The Debtor's failure to comply with the Turnover Order was simply the result of his reasonable misapprehension. As such, the Debtor's non-compliance does not amount to a refusal.
III. The Plaintiff's Third Claim Under 11 U.S.C. § 542
11 U.S.C. § 542(a) requires, in relevant part, that:
*737 an entity...in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
For property to be recoverable under a turnover order, "it is necessary that a trustee demonstrate, not only that the debtor received or had possession of estate property, but also that the debtor was in possession of the property, or its value, at the time the turnover motion was filed." Hill v. Muniz (In re Muniz) , 320 B.R. 697, 699-700 (Bankr. D. Colo. 2005) ; see also Maggio v. Zeitz , 333 U.S. 56, 63-64, 68 S.Ct. 401, 92 L.Ed. 476 (1948) ("The nature and derivation of the remedy make clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding.").
As a preliminary matter, it is unclear how the Trustee arrived at the $ 5,313.27 amount which he requests that the Debtor be ordered to turn over. The evidence submitted by both parties establishes that the Debtor received only $ 4,488.31 in post-petition payments from Bird Barrier, not including the $ 1,273.25 in payments that the Debtor has already turned over. Thus, the Trustee may only recover, at most, $ 4,488.31.
While the Trustee has demonstrated that the Debtor received $ 4,488.31 in post-petition Bird Barrier payments, the evidence does not show that that this amount was in the Debtor's possession at the time of the turnover proceeding. Rather, the evidence establishes that the Debtor only possessed $ 1,552.83 in Bird Barrier payments in his Chase bank account at the time the Motion for Turnover was filed and shortly after it was granted. Accordingly, the Trustee is entitled to turnover of $ 1,552.83 from the Debtor.
CONCLUSION
From the outset of his bankruptcy case, the Debtor expressed to both Ms. Weselis and the Trustee, a clear intent to retain his interest in the clip. Yet, through the case, and more specifically, the Trustee's action against Bird Barrier, the Debtor lost said interest. The evidence and testimony submitted at trial establishes that the Debtor intended to comply with the Trustee's request and, in fact, did provide the Trustee with two Bird Barrier payments after the § 341 Meeting and before the entry of his discharge. Based on the foregoing, had the Debtor understood his obligations with respect to the Bird Barrier payments, he likely would have complied to avoid losing his interest in the clip. Thus, the Court finds that the Debtor did not act with a knowing intent to defraud in his failure to turn over the post-discharge payments, and his failure to comply with the Turnover Order was neither willful nor intentional.
Accordingly, it is
ORDERED that judgment shall enter in favor of the Debtor and against the Trustee on the Trustee's first claim under 11 U.S.C. § 727(d)(2). This claim shall be dismissed with prejudice.
IT IS FURTHER ORDERED that judgment shall enter in favor of the Debtor and against the Trustee on the Trustee's second claim under 11 U.S.C. § 727(d)(3). This claim shall be dismissed with prejudice.
IT IS FURTHER ORDERED that judgment shall enter in favor of the Trustee and against the Debtor in the amount *738 of $ 1,552.83 on the Trustee's third claim under 11 U.S.C. § 542.
IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

At trial, the Trustee offered Exhibit 10, which was admitted into evidence. Exhibit 10, in relevant part, is an email from Ms. Weselis to the Trustee, dated January 26, 2017. In the email, Ms. Weselis indicates that the Debtor did, in fact, believe that his case was "over" after he received his discharge order. However, Ms. Weselis also indicates that she reminded the Debtor to forward his Bird Barrier payments to the Trustee until further notice. Exhibit 10 suggests (i) that the Debtor may have been aware as early as January 26, 2017, that the entry of discharge did not mean that his case was completed, and (ii) that he may have known he was required to forward his post-discharge Bird Barrier payments to the Trustee. The Debtor was not asked at trial about his conversation with Ms. Weselis that preceded this email and thus gave no testimony regarding how it may have impacted his state of mind. Therefore, the Court affords little weight to Exhibit 10 when viewed in light of the totality of the Debtor's testimony at trial.